## CIRCUIT COURT OF LOUDOUN COUNTY

In re Change of Name of J.R.O.

March 26, 1992

Case No. (Law) 13237

BY JUDGE THOMAS D. HORNE

This matter is before the court on the petition of L.A.K. to change the name of her son, J.R.O., to that of J.R.K., § 8.01–217, Code of Virginia, as amended. "O" is the petitioner's maiden name. Petitioner married M.P.K. on June 30, 1990. The "K's" have one daughter born of their marriage, Kt.M.K. "Kt" was born on April 18, 1991. The Petition is opposed by "J's" natural father, B.D.N.

"J" was born out of wedlock to petitioner and Mr. "N" on March 10, 1983, in the State of Minnesota. The petitioner has been a resident in the Commonwealth of Virginia since 1987 while the respondent continues to reside in the State of Minnesota. Mrs. "K" and Mr. "N" separated prior to the birth of "J" and at no time thereafter resumed cohabitation. "J's" birth record reflects the surname of his mother.

Petitioner represents that since her marriage to Mr. "K," "J" has taken it upon himself to use the name J.R.K. at all times. She suggests that such a change of name is necessary to provide family unity and harmony, create an identity between "J" and his new sister, and eliminate confusion for the children.

In his response in opposition to the petition, Mr. "N" contends that such a change of name would be contrary to "J's" best interests. He relates, *inter alia*, how he has consistently endeavored to maintain and foster his status as the natural father of this minor child, consistently endeavored to have visitation time with the minor child, and consistently paid support to aid the minor child. He alludes to the warm and loving relationship which he has maintained with his son in the past and to his desire to continue and expand that relationship as "J" grows older.

In the instant case, petitioner is required to demonstrate that a change of name for "J" is in his best interest. Section 8.01–217, Code of Virginia (1950), as amended. In the two cases relied upon by counsel, the Court addressed the issue of an infant's change of name in the face of opposition by the natural father. *Flowers v. Cain*, 218 Va. 234 (1977); and *Beyah v. Shelton*, 231 Va. 432 (1986). Both cases dealt with petitions brought by the mother of the child to have the child's surname changed from that of the paternal surname to the surname of the stepfather. In *Flowers*, the children whose names the petitioner sought to change were born during her marriage to the respondent and bore the surname of the natural father. This situation differs from that presented in *Beyah*, in that in *Beyah*, the natural parents were never married. However, it is significant to note the child in *Beyah* took the surname of the father. Respondent fathers in both cases filed opposition to the change of name, and in both cases, the petition for change of name was resolved in favor of the fathers.

When a mother having custody of a child seeks to change that child's name over the objection of the natural father, she must demonstrate by satisfactory evidence that the change would be in the child's best interest. *Flowers*, 218 Va. 234, 237 (1977); *Beyah*, 231 Va. 432, 434 (1986). It must be shown that a substantial reason exists for such a change. A change of name should not be granted over a father's objection merely to avoid minor inconvenience or embarrassment to the mother and child. *Flowers* at 237; *Beyah* at 435.

In considering whether a child's surname should be changed from that of the natural father to another surname, courts are to be guided by the following considerations:

(1) whether the father has abandoned the natural ties ordinarily existing between parent and child;

(2) whether the father has engaged in misconduct sufficient to embarrass the child in the continued use of the father's name;

(3) whether the child otherwise will suffer substantial detriment by continuing to bear the father's name;

(4) whether the child is of sufficient age and discretion to make an intelligent choice and he desires that his name be changed. *Flowers* at 236–237.

The evidence in this case clearly demonstrates that Mr. "N" has from "J's" birth been a loving parent who has made a substantial emotional and financial commitment to "J's" well being. There is no

evidence in this record which would demonstrate that his investment in his future will be any less significant. "J" readily identifies with his father and clearly loves him very much. The Court finds no evidence that the change of his surname to "K" will lessen the significant ties which he has to his natural father and his family.

The issue in this case differs significantly from that presented in *Flowers* and *Beyah*. In this case, the mother has remarried and assumed the surname of her husband. A child has been born of the union of Mr. and Mrs. "K." "J" is very close to his half sister and readily identifies with her. On his own volition, he commenced using the surname "K" in school after the marriage of his mother to Mr. "K." "J" has never had the surname of his natural father. The strong bond which he has to Mr. "N" has never before been in any way dependent upon his use of his surname. There is no indication that the maintenance of his birth name will affect his relationship with his father.

Thus, the four considerations address in *Flowers* and *Beyah* are inapplicable to this case. The only connection which the continued use of the maiden name of Mrs. "K" to "J's" well being would be one of historical interest. This Court must be guided by what is in this young man's best interest. That interest clearly mandates that his name should be changed to his mother's name by her marriage to Mr. "K." The use of that name has been helpful to his sense of identity with his peers and in school. It forms the basis for a closer relationship with his half sister.

In *Flowers* and *Beyah*, the father's surname provided a basis upon which the father could continue what he had in the past begun. The Court gave voice to this proposition when it said:

> Where divorce occurs and the mother is awarded custody, usually it is in a child's best interest to maintain and encourage rather than weaken, the relationship between father and child. Accordingly, courts elsewhere, in the aftermath of divorce, have been reluctant to change a child's name over the objection of a devoted father for fear that the change would damage further the already strained father-child relationship. *Flowers*, 236.

In the instant case, the birth name of this child forms no such basis for a strengthening of the bond of the child to the natural father. Leaving the child with his mother's surname will not symbolize the

closeness of the child and father, for they simply will not share the same last name.

The record will reflect that the Court received the testimony of "J" in the presence of counsel for the parties.

Ms. Joseph may draw an Order consistent with this opinion granting the relief sought in the Petition.